UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEFFREY T. WORTHLEY,<br>    Plaintiff,<br><br>VS.<br><br>SCHOOL COMMITTEE OF GLOUCESTER;<br>and BEN LUMMIS, in his official and personal capacities,<br>    Defendants. | )<br>)<br>)<br>)  C.A. NO. 1:22-cv-12060-DJC<br>)<br>)<br>)<br>) |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S EMERGENCY EX PARTE MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

### I.  INTRODUCTION

On November 14, 2022, Ben Lummis, Superintendent of Gloucester Public Schools, issued a lawful No Trespass Order to plaintiff Jeffrey T. Worthley, a true and accurate copy of which is attached hereto as Exhibit "A". The No Trespass Order was issued in response to plaintiff's targeting of a minor female student following voting at Gloucester High School, and plaintiff's subsequent inappropriate communications with that minor female student ("Jane Doe") that evening.[1] The No Trespass Order notified plaintiff that he was not to appear on or enter the premises of Gloucester High School ("GHS") during school hours or *at any school sponsored event or activity* from November 14, 2022, until the end of the 2022-2023 school year. Notably, the No Trespass Order does not ban plaintiff from appearing at GHS to attend events *not* sponsored by the school, such as voting, City Council meetings or other City events, or events held be third parties.

On November 23, 2022, plaintiff, a member of the Gloucester City Counsel, filed a four-Count Complaint in Essex County Superior Court against the School Committee of Gloucester

---

[1] To protect the student's identity, defendants refer to the student only by the pseudonym "Jane Doe."

1

("School Committee") and Superintendent Ben Lummis, in his individual and official capacities. In his Complaint, plaintiff alleges defendants violated his First Amendment rights under 42 U.S.C. § 1983 (Count I), his procedural due process rights under 42 U.S.C. § 1983 (Count II), his free speech rights under M.G.L. c. 12, § 11I (Count III), and his procedural due process rights under M.G.L. c. 12, § 11I (Count IV). Defendants removed the action to the United States District Court for the District of Massachusetts. Plaintiff now seeks injunctive relief in the form of a temporary restraining order and preliminary injunction enjoining the School Committee from enforcing this limited, temporary ban on plaintiff's appearance on or entry onto GHS premises during school hours. The Court should deny such relief. The defendants submit this Memorandum of Law in Opposition to plaintiff's Emergency Motion. In further Opposition to plaintiff's Emergency Motion, the defendants also submit the Affidavits of Ben Lummis and Principal James Cook, and Exhibits A – B thereto.

## II.   BACKGROUND

On November 8, 2022, plaintiff, a City Councilor, went to Gloucester High School to vote. (See Affidavit of Ben Lummis (Lummis Aff.), ¶ 10; ECF Doc. No. 13). Adjacent to the polls, the GHS student government was holding a bake sale. (Affidavit of Principal James Cook ("Cook Aff.) ¶ 11). Before entering the school to vote, plaintiff engaged Jane Doe, a sixteen-year-old GHS student, in conversation. (Cook Aff., ¶ 11; Ex. "B")In that conversation, plaintiff promised to assist Jane Doe in her studies and extracurricular activities and obtained her cell phone number. (See Ex. "B", Cook Aff. ¶ 11). During and immediately after the conversation, Jane Doe believed plaintiff was the Mayor of Gloucester; plaintiff did not tell Jane Doe the exact position he held. (See Ex. "B", Cook Aff., ¶ 11). Although other students were present at the time, plaintiff only sought and obtained Jane Doe's phone number. (See Cook Aff., ¶ 11, Ex. "A"). Plaintiff did not

2

seek the permission of an adult before obtaining Jane Doe's phone number. (See Ex. "B"). Plaintiff further represented in this conversation with the student that he was involved in an official school or City program. (See Cook Aff., ¶ 11).

After voting, plaintiff texted Jane Doe, soliciting her involvement in an unofficial volunteer group, and suggesting that her proposed involvement would include communicating with teachers and students to further develop the volunteer group.[2] (Cook Aff., ¶ 11). This communication made Jane Doe uncomfortable, as it did not align with what plaintiff stated during their in-person conversation at the bake sale. (See Ex. "B"). Jane Doe told her mother about the interaction with plaintiff. (Id.). Jane Doe responded to plaintiff's text message at approximately 9:30 p.m. via text message, at the direction of her mother, who told her to politely decline. (See Ex. "B"; ECF Doc. No. 13, Ex. B). Jane Doe apologized for the late text, and politely declined plaintiff's invitation to join the volunteer group. (Id.). Plaintiff, apparently not recognizing Jane Doe's polite declination of his offer to join the volunteer group, nonetheless continued to text Jane Doe regarding her proposed involvement in the group, and indicated that her involvement would be based on "what [Jane Doe's] schedule would allow[.]" (Id.). Plaintiff further detailed his personal sleep habits, expressly stating "it would never be a problem to text at any time." (Id.).

That evening, Jane Doe's mother emailed GHS Principal James Cook ("Principal Cook"). (Ex. "B", Cook Aff., ¶ 3). Jane Doe's mother informed Principal Cook that Jane Doe was made very uncomfortable by the interaction with Mr. Worthley, and specifically by plaintiff "leaning into" Jane Doe to take the lead and solicit other students to join his cause. (Id.). Jane Doe's mother further informed Principal Cook that Jane Doe felt embarrassed and remorseful because she believed plaintiff was the Mayor of Gloucester, and that Jane Doe felt uncomfortable and caught

---

[2] Plaintiff did not seek permission from the GHS Principal or the Superintendent prior to soliciting student volunteers for the group.

3

off guard because the subject of the text messages did not align with their discussion at the bake sale. (Id.). Jane Doe's mother informed Principal Cook that they (Jane Doe's parents) did not want Jane Doe to have any further communication with plaintiff as they considered his approach to their teenage daughter to be "very unprofessional and borderline inappropriate." (Id.). The mother further characterized the situation as "dangerous" and stated she and Jane's father "are so upset." (Ex. "B").

The following day, on November 9, 2022, Principal Cook met with Jane Doe before school. (Cook Aff., ¶ 11). Jane Doe shared with Principal Cook what took place at the bake sale, and also shared her text messages with the plaintiff. (Cook Aff., ¶ 11). During that meeting, Jane Doe showed a keen understanding of the power dynamic in the situation, and what aspects of the interaction were inappropriate. (Cook Aff., ¶ 12).

Also on November 9, 2022, Jane Doe's father confronted plaintiff by phone regarding his communications with Jane Doe. (ECF Doc. No. 13, Ex. C). In that conversation, plaintiff misrepresented the details of his conversation with the student and asserted that Jane Doe, not he, initiated the communications. (Id.). This assertion is belied by Exhibit B of plaintiff's Complaint, which shows that it was plaintiff who initiated the text conversation with Jane Doe. (ECF Doc. No. 13, Ex. B).

Principal Cook contacted Superintendent Ben Lummis on or about November 9, 2022, relaying the above-referenced information. (Cook Aff., ¶ 12; Lummis Aff., ¶¶ 6, 8). After discussion with Suzanne Egan, General Counsel for the City of Gloucester, a meeting with plaintiff was scheduled to discuss the incident, ensuing communications, and next steps. (Lummis Aff., ¶ 16). On November 14, 2022, General Counsel Egan asked plaintiff to attend a meeting. (Lummis Aff., ¶ 17). Plaintiff, General Counsel Egan, and Gloucester Police Chief attended. (Id.). During

4

the meeting, General Counsel Egan provided plaintiff with an unsigned copy of the No Trespass Order. Plaintiff was also provided with an opportunity to explain his version of events, at which time he presented text messages with Jane Doe to General Counsel Egan and Police Chief Conley. Plaintiff did not acknowledge that his communications with Jane Doe were in any way inappropriate.

On November 14, 2022, Superintendent Lummis issued the No Trespass Order to plaintiff pursuant to M.G.L. c. 266, § 120. (See Exhibit "A"). Under the Order, plaintiff is forbidden from appearing on or entering the premises of Gloucester High School for the remainder of the 2022-2023 school year for school-sponsored events and during school hours. (Id.). Plaintiff filed his Complaint in Essex County Superior Court ("State Court") on November 23, 2022. (ECF Doc. No. 1, Ex. B). On November 25, 2022, plaintiff filed a motion, captioned Emergency *Ex Parte* Motion for Temporary Restraining Order and Motion for a Preliminary Injunction in State Court. The State Court, "after thorough consideration," denied plaintiff's motion insofar as it requested *ex parte* relief and set the matter over for a hearing on December 8, 2022. On December 5, 2022, defendants filed a Notice of Removal to the United States District Court pursuant to 28 U.S.C. § 1441(a). The instant case was docketed in the United States District Court on December 6, 2022. (ECF Doc. No. 6). As a result of defendants' removal, the State Court cancelled the hearing on plaintiff's motion. Also on December 6, 2022, plaintiff refiled his Emergency *Ex Parte* Motion for Temporary Restraining Order and Motion for a Preliminary Injunction and memorandum in support thereof in this Court. (EFC Doc. Nos. 8, 8-1, 8-2, 8-3).

On December 14, 2022, counsel for the School Committee contacted plaintiff's counsel to schedule a hearing on the previously issued No Trespass Order, proposing several dates and times

in December, 2022, and January, 2023. Plaintiff, through counsel, has indicated that he does not intend to participate in this hearing.

The defendants oppose plaintiff's motion for injunctive relief, and ask that this Honorable Court deny same as plaintiff is unable to make a clear showing that he is entitled to such extraordinary relief.

### III.     ARGUMENT

#### A. **PRELIMINARY INJUNCTION STANDARD.**

To obtain a preliminary injunction, plaintiff bears the burden of demonstrating "(1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest." NuVasive, Inc. v. Day, 954 F.3d 439, 443 (1st Cir. 2020). See Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 9 (1st Cir. 2013); Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003). Plaintiff bears the burden of demonstrating that each of the four factors weighs in his favor. Esso Std. Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006). However, "the four factors are not entitled to equal weight in the decisional calculus; rather, '[l]ikelihood of success is the main bearing wall of the four-factor framework.'" Corp. Techs., Inc., 731 F.3d at 9-10 (quoting Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 (1st Cir. 1996)). See CVS Pharmacy, Inc. v. Lavin, 951 F.3d 50, 55 (1st Cir. 2020) (substantial likelihood of success "weighs most heavily in the preliminary injunction analysis."); Baptiste v. Kennealy, 490 F. Supp. 3d 353, 380 (D. Mass. 2020) (substantial likelihood of success on merits is the "sine qua non for obtaining a preliminary injunction"). See also Sindicato Puertorriqueno de Trabajadores v. Fortuno, 699 F.3d 1 (1st Cir. 2012) (in the First

Amendment context, the likelihood of success on the merits is the "linchpin of the preliminary injunction analysis").

Further, a preliminary injunction is an "extraordinary and drastic remedy." Voice of the Arab World, Inc. v. MDTV Medical News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (quoting Munaf v. Geren, 553 U.S. 674, 689-90 (2008)).  Such an extraordinary remedy "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Nieves-Marquez, 353 F.3d at 120.

### B. PLAINTIFF FAILS TO MEET THE PRELIMINARY INJUNCTION STANDARD AND, THEREFORE, HIS MOTION SHOULD BE DENIED.

#### 1. Plaintiff Fails to Show a Substantial Likelihood of Success on the Merits Under Count I of his Complaint.

In Count I of his Complaint, plaintiff seeks to recover under 42 U.S.C. § 1983 for defendants' alleged deprivation of his right to free speech as protected under the First Amendment of the United States Constitution.  Specifically, the plaintiff alleges that the No Trespass Order (1) violated his First Amendments rights to freedom of speech, expression, petitioning, and assembly, and (2) was issued for retaliatory purposes.  Plaintiff cannot show a substantial likelihood of success on the merits under either theory.

As an initial matter, the U.S. Constitution does not require government to grant access to all who wish to exercise their right of free speech on government property "without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 799-800 (1985).  United States Postal Serv. v. Council of Greenburgh Civic Ass'ns, 453 U.S. 114, 129 (1981) ("First Amendment does not guarantee access to property simply because it is owned or controlled by the government.").  Moreover, the Massachusetts No Trespass Statute, M.G.L. c. 266, § 120, and the

No Trespass Order at issue here, are not directed at speech. The Massachusetts No Trespass Statute states in part:

> Whoever, without right enters or remains in or upon the … buildings … or improved or enclosed land … of another, … after having been forbidden so to do by the person who has lawful control of said premises, whether directly or by notice posted thereon, … shall be punished by a fine of not more than one hundred dollars or by imprisonment for not more than thirty days or both such fine or imprisonment.

M.G.L. c. 266, § 120. As a three-judge District Court panel once observed: "[T]he trespass statute is not aimed at regulating speech or communication *in any form* …." Hurley v. Hinckley, 304 F. Supp. 704, 708 (D. Mass. 1969), *aff'd sub nom*, Doyle v. O'Brien, 396 U.S. 277 (1970) (per curiam) (emphasis added). Rather, it targets conduct – *i.e.*, trespassing. Thus, in Hurley, the Court rejected plaintiffs' claims that a municipality's use of the No Trespass Statute to restrict plaintiffs' access to Town Hall violated their First Amendment rights. The Court went on to state that "[p]hysical presence in a public building dedicated to specific public uses other than that of a public thoroughfare, even presence for the purpose of communicating ideas, is not 'pure speech'." Hurley, 304 F. Supp. At 708.

The same analysis applies here. The No Trespass Order, which temporarily prohibits plaintiff's physical presence at GHS for school sponsored events or activities neither violates the First Amendment nor is it aimed at regulating plaintiff's speech. Simply because plaintiff asserts that his purpose for attending school-sponsored events at GHS is to engage in expressive activity does not make it so. Otherwise, any person instructed not to trespass on government property could claim First Amendment protection merely by insisting that he intended to speak on such property. For that reason alone, plaintiff is unable to establish a substantial likelihood of success on the merits.

Even assuming the No Trespass Order at issue was directed at plaintiff's speech, which the defendants deny, "the prophylaxis of the First Amendment is not without limits. Reasonable restrictions as to the time, place, and manner of speech in public fora are permissible, provided that those restrictions 'are justified without reference to the content of the regulated speech, ... are narrowly tailored to serve a significant governmental interest, and ... leave open ample alternative channels for communication of the information.'" Wholey v. Tyrell, 567 F. Supp. 2d 279, 285 (D. Mass. 2008) (quoting Bl(a)ck Tea Soc'y v. City of Boston., 378 F.3d 8, 12 (1st Cir. 2004)).  First Amendment law recognizes three types of fora; the traditional public forum, the designated public forum, and the limited or non-public forum. Ridley v. MBTA, 390 F.3d 65, 76 (1st Cir. 2004).  A limited or non-public forum is created "when the government opens its property only to use by certain groups or for the discussion of certain subjects." Lu v. Hulme, 133 F. Supp. 3d 312, 324-325 (D. Mass. 2015) (citing Christian Legal Soc. Chap. of Univ. of Cal., Hastings Coll. of Law v. Martinez, 561 U.S. 661, 679 n.11 (2010)). Government has the right to preserve public property for the use to which it is lawfully dedicated and, therefore, reasonable restrictions on non-public fora are permitted. In a limited public forum, control over access "can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint-neutral." Cornelius, 473 U.S. at 806; Good News Club v. Milford Cent. Sch., 533 U.S. 98, 106-107 (2001). Content-based restrictions are permissible in limited public fora. Good News, 533 U.S. at 107.  GHS is, at best, a limited public forum.  See Tyler v. Coeur d'Alene Sch. Dist. #271, 568 F. Supp. 3d 1071, 1087 (D. Idaho 2021) (citing United Food & Com. Workers Loc. 1099 v. City of Sidney, 364 F.3d 738, 750 (6th Cir. 2004)) (holding school was either a nonpublic forum or a limited public forum on election day, and thus reasonableness test applied to determine whether restrictions of expressive activity on school property violated

First Amendment). Therefore, restrictions on speech on GHS property need only be reasonable and viewpoint neutral to pass Constitutional muster. Good News, 533 U.S. at 107. Further, a State's restriction on access to a limited public forum, "'need not be the most reasonable or the only reasonable limitation.'" Christian Legal Soc. Chap. of Univ. of Cal., Hastings Coll. of Law, 561 U.S. at 661, (quoting Cornelius, 473 U.S., at 808)). "The reasonableness standard is not a particularly high hurdle; there can be more than one reasonable decision, and an action need not be the most reasonable decision possible in order to be reasonable." Ridley, 390 F.3d at 90.

As discussed supra, the No Trespass Order issued to the plaintiff is content-neutral, limited in scope, and says nothing about plaintiff's speech. See Davison v. Rose, 19 F.4th 626, 635 (4th Cir. 2021) (upholding no-trespass letters issued to parent by school board absent showing that ban was issued because of plaintiff's protected speech, "as opposed to his threats and antagonistic behavior."). The No Trespass Order prohibits plaintiff's physical presence at school-sponsored events, while school is in session, for the remainder of the 2022-2023 school year. These restrictions are narrowly tailored and advance a significant government interest of ensuring the safety of all students in GHS's care. Wholey, 567 F. Supp. 2d at 286 (granting motion to dismiss First Amendment claim where limited restrictions on access to school property advanced a significant government interest, as defendants owed a duty of care to their employees and students). Lastly, the No Trespass Order in this case leaves open "ample channels of communication." Id. Plaintiff remains free to attend events on GHS property which are not school-sponsored and outside of school hours, including for political activities related to his position on the City Council. Under the Order, plaintiff can still, for example, vote at his polling station at Gloucester High School, and engage in political activities throughout the City.

Nor can plaintiff prevail on his retaliation claim. As a general matter, claims of retaliation for the exercise of protected First Amendment conduct are cognizable under 42 U.S.C. § 1983. Najas Realty, LLC v. Seekonk Water Dist., 68 F. Supp. 3d 246, 254 (D. Mass. 2014), *aff'd*, 821 F.3d 134 (1st Cir. 2016) (quoting Powell v. Alexander, 391 F.3d 1, 16 (1st Cir.2004)). "In order to succeed on a First Amendment retaliation claim, a party must show that [his] conduct 'was constitutionally protected, and that this conduct was 'a substantial factor [or] ... a motivating factor' driving the allegedly retaliatory decision.'" Gorelik v. Costin, 605 F.3d 118, 123 (1st Cir. 2010) (quoting Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 10 (1st Cir.2005)). Even drawing all reasonable inferences in plaintiff's favor, the No Trespass Order in this case does not amount to a retaliatory act by the defendants. See Gorelick, supra at 123-124 (affirming dismissal of retaliation claim in complaint).

First, it is far from clear that plaintiff's conduct, in texting with a minor female high school student without her parents' permission, was constitutionally protected. Although plaintiff couches these communications as constitutionally protected under the First Amendment in his ability to contact constituents regarding volunteer activities, plaintiff's position as a City Councilor does not, on its own, allow him to communicate with minor students whenever and wherever he chooses. See Del Gallo v. Parent, 545 F. Supp. 2d 162, 184 (D. Mass. 2008), aff'd in part, 557 F.3d 58 (1st Cir. 2009) (holding political candidate could be barred from soliciting signatures supporting his candidacy on post office sidewalks).

Plaintiff's Complaint also fails to show that the substantial or motivating factor for defendants' issuance of the No Trespass Order was his constitutionally protected conduct. See Goldstein v. Galvin, 719 F.3d 16, 30 (1st Cir. 2013) (reaffirming that to prevail on a retaliation claim, plaintiff must adduce proof of a causal connection between protected speech and the

11

y

allegedly retaliatory response). Furthermore, the allegedly retaliatory act of issuing a lawful No Trespass Order pursuant to M.G.L. c. 266, § 120, constitutes government speech. See id. at 31 (noting that public officials have free speech rights, along with "an obligation to speak out about matters of public concern"). Courts have not been receptive to retaliation claims arising out of government speech. See id. (citing Balt. Sun Co. v. Ehrlich, 437 F.3d 410, 417 (4th Cir.2006)). Assuming, *arguendo*, that some retaliatory motive could be established and attributed to the defendants in this matter, that would not revive plaintiff's First Amendment retaliation claim. A public official's malicious intent, on its own, cannot amount to a retaliatory response. See Goldstein, supra at 31 (quoting Balt. Sun Co., 437 F.3d at 420.)

For these reasons, plaintiff cannot meet his burden to demonstrate a substantial likelihood of success on the merits of Count I.

### 2. **Plaintiff Fails to Show a Substantial Likelihood of Success on the Merits Under Count II of his Complaint.**

In Count II, Plaintiff asserts that the defendants' conduct of issuing the No Trespass Order violates his right to due process under the Fourteenth Amendment. Plaintiff fails to show a substantial likelihood of success on the merits of his due process claim and, therefore, injunctive relief must be denied.

Analysis of a procedural due process claim proceeds in two steps: "We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." Swarthout v. Cooke, 562 U.S. 216, 219 (2011). "Once the deprivation of a constitutionally protected liberty or property interest is established, what process is due is determined by balancing three factors: (1) "'the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of

12

additional or substitute procedural safeguards;" and (3) "the Government's interest.'" Price v. Mount Wachusett Cmty. Coll., 2012 WL 3596859, at *3 (D. Mass. Feb. 17, 2012) (quoting Collins v. University of N.H., 664 F.3d 8, 17 (1st Cir.2011) (additional citations omitted)).

Generally speaking, the Due Process Clause protects citizens from First Amendment violations. See Gitlow v. People of State of New York, 268 U.S. 652, 630 (1925). To the extent plaintiff alleges that the No Trespass Order's restriction on his access to GHS itself violates his procedural due process rights, it is unclear whether that access itself is a constitutionally protected interest. See Price v. Mount Wachusett Cmty. Coll., 2012 WL 3596859, at *7 (D. Mass. Feb. 17, 2012) (concluding college complied with due process requirements by issuing no-trespass and subsequently providing plaingif opportunities to address its propriety and scope). Assuming, *arguendo*, that plaintiff has a liberty or property interest in being physically present on GHS property, the First Circuit has held that when a campus ban is issued in response to a person's behavior, it may be imposed without prior notice or hearing as long as subsequent proceedings allow an opportunity to contest its basis and scope. See Collins v. Univ. of New Hampshire, 664 F.3d 8, 18 (1st Cir. 2011). In this case, after issuance of the No Trespass Order, the defendants attempted to schedule a post-deprivation hearing to provide plaintiff an opportunity to be heard. See id. (concluding that allowing a pre-hearing ban, followed by an opportunity to be heard adequately balanced university's "strong interest in order and safety"). Therefore, evening assuming the restriction on plaintiff's access to the GHS campus for certain school-sponsored activities constituted a deprivation of a liberty or property interest, the restrictions were imposed according to constitutionally adequate procedures. See Cronin v. Town of Amesbury, 81 F.3d 257, 260 (1st Cir. 1996) (stating that even assuming defendants failed to provide due process in termination decision, plaintiff could not prevail on due process claim unless he could show that

state failed to provide adequate post deprivation remedy). See also Lowe v. Scott, 959 F.2d 323, 340–41 (1st Cir.1992) ("[I]f a state provides adequate post-deprivation remedies—either by statute or through the common-law tort remedies available in its courts—no claim of a violation of procedural due process can be brought under § 1983 against the state officials whose random and unauthorized conduct caused the deprivation."). Plaintiff's stated refusal to participate in this additional dialogue with the defendants should not form the basis of plaintiff's due process claim. Plaintiff is unable to demonstrate a substantial likelihood of success under Count II of his Complaint.

### 3. **Plaintiff Fails to Show a Substantial Likelihood of Success on the Merits Under Counts III and IV of his Complaint.**

In Counts III and IV of his Complaint, plaintiff alleges that the defendants' issuance of the No Trespass Order was in violation of M.G.L. c. 12, § 11I, the Massachusetts Civil Rights Act ("MCRA"). Specifically, under Count III, plaintiff alleges that the defendants' issuance of the lawful No Trespass Order was in retaliation for plaintiff's speech in violation of M.G.L. c. 12, § 11I; and under Count IV, plaintiff claims that the defendants' issuance of the lawful No Trespass Order violated his rights to procedural due process under M.G.L. c. 12, § 11I.

To recover under the MCRA, plaintiff must show "that 1) his/her exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, 2) has been interfered with, or attempted to be interfered with, and 3) that the interference or attempted interference was by 'threats, intimidation or coercion.'" Ali v. Univ. of Massachusetts Med. Ctr., 140 F. Supp. 2d 107, 110 (D. Mass. 2001) (quoting Swanset Dev. Corp. v. City of Taunton, 423 Mass. 390, 395 (1996)).

Plaintiff fails to state a claim under the MCRA. First, plaintiff's claims against the School Committee and Superintendent Lummis in his official capacity are not actionable. The School

Committee is not a "person" subject to suit and liability under the MCRA. Meagher v. Andover Sch. Comm., 94 F. Supp. 3d 21, 45 (D. Mass. 2015) (citing Howcroft v. City of Peabody, 51 Mass. App. Ct. 573, 595, 747 (2001)). And plaintiff's suit against the Superintendent in his official capacity is, in all respects but name, the same as a suit against the City of Gloucester. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); Kentucky v. Graham, 473 U.S. 159, 166 (1985). Therefore, plaintiff is unable to show a substantial likelihood of success on the merits under Count III and Count IV against the School Committee or the Superintendent in his official capacity. See Meagher, supra (granting school committee's motion for summary judgment as school committee is a municipal entity not subject to suit under the MCRA).

As to his claims against Superintendent Ben Lummis in his individual capacity, plaintiff's Complaint fails to allege facts sufficient to demonstrate that his exercise or enjoyment of any protected right was subjected to interference by means of "threats, intimidation or coercion."[3] Superintendent Lummis engaged in no threats, intimidation or coercion. First, both threats and intimidation often rely on an element of actual or threatened physical force. See Valentin v. Town of Natick, No. CV 21-10830-PBS, 2022 WL 4481412, at *7 (D. Mass. Sept. 27, 2022) (quoting Kennie v. Nat. Res. Dept. of Dennis, 451 Mass. 754, 889 N.E.2d 936, 944 (2008)). Plaintiff's Complaint is silent as to any actual or threatened physical force involved in the Superintendent's issuance of a lawful No Trespass Order. Nor does plaintiff allege a scheme of harassment sufficient to rise to the level of threats, intimidation or coercion under the MCRA. See Valentin, supra (citing Murphy v. Town of Duxbury, 40 Mass. App. Ct. 513 (1996); Sena v. Commonwealth, 417 Mass. 250 (1994) ("Generally, by itself, a threat to use lawful means to reach an intended result is not actionable under § 11I")). Finally, a direct violation of a person's rights (even if

---

[3] The sole reference in plaintiff's Complaint to "threats" and "intimidation" is contained at Paragraph 37. However, plaintiff fails to plausibly allege facts supporting a claim under the MCRA.

15

unlawful) does not alone qualify as threats, intimidation or coercion under the MCRA. See Longval v. Commissioner of Corr., 404 Mass. 325, 333 (1989) (shackling and handcuffing inmate to cot held insufficient to state MCRA claim).

Nor can plaintiff prevail on his procedural due process claim under the MCRA. As noted above, plaintiff does not have a constitutional liberty or property interest to be present on the premises of GHS. Further, "alleged inadequate process in the moment does not always amount to a due process violation." Valentin, 2022 WL 4481412, at *6. Even assuming the defendants interfered with a protected right of the plaintiff by means of "threats, intimidation or coercion" (which the defendants deny), the post-deprivation hearing scheduled by the defendants provides the plaintiff with constitutionally adequate process. See Collins, 664 F.3d at 18. Plaintiff's Complaint falls well short of alleging facts supporting a claim under the MCRA, and therefore plaintiff is unable to demonstrate a substantial likelihood of success on the merits under Counts III and IV.

### 4. The Balance of Hardships and the Public Interest Weigh Against an Award of Injunctive Relief to Plaintiff and Injunctive Relief is Not in the Public Interest.

As stated above, plaintiff bears the burden of establishing that the four factors of a preliminary injunction weigh in his favor.[4] Esso Std. Oil, 445 F.3d at 18. Insofar as the third factor is concerned – the balance of hardships – the standard to be applied is a "stringent" one, requiring a court to carefully weigh the interests on both sides. Rushia v. Town of Ashburnham, Mass., 710 F.2d 7, 10 (1st Cir. 1983) (citing Doran v. Salem Inc, Inc., 422 U.S. 922, 931 (1975)). As to plaintiff's interests – the No Trespass Order does not preclude plaintiff's physical presence on

---

[4] Under the circumstances here, plaintiff must also establish irreparable harm. See ACA Int'l v. Healey, 457 F. Supp. 3d 17, 32 (D. Mass. 2020) (a finding of a First Amendment violation obviates need for additional showing of irreparable harm). Given the limited nature of the No Trespass Order at issue, plaintiff is unable to make such a showing. See also Rushia v. Town of Ashburnham, Mass., 701 F.2d 7, 10 (1st Cir. 1983) (fact that plaintiff is asserting First Amendment rights does not automatically require a finding of irreparable injury).

GHS property for events not sponsored by the school. Further, plaintiff can continue to engage in political activities, including communications with constituents throughout the City of Gloucester and in a variety of means, completely unimpeded by the No Trespass Order. The No Trespass order is also temporally limited, in that it prohibits plaintiff's physical presence on GHS property only until the end of the 2022-2023 school year, and only at certain times. See Carroll v. Anders, No. CV 19-2060, 2020 WL 1450553, at *11 (E.D. Pa. Mar. 25, 2020) (chance of irreparable injury minimal where no trespass order expired).

The defendants, on the other hand, have a well-established interest in the safety and security of the students in their care. See Demers ex rel. Demers v. Leominster Sch. Dep't, 263 F. Supp. 2d 195, 203 (D. Mass. 2003) (noting deference to schools' decisions in connection with the safety of their students, even where freedom of expression is involved, and concluding school district did not violate First Amendment "given difficulty in balancing safety concerns and free expression); Alter v. City of Newton, 35 Mass. App. Ct. 142, 145 (1993) (City owes duty of safety to students). This Court has repeatedly recognized schools' interests in ensuring the safety and welfare of students. See, e.g., E.T., a Minor, by his Parents v. Bureau of Special Educ. Appeals of the Div. of Admin. L. Appeals, 169 F. Supp. 3d 221, 245 (D. Mass. 2016) (granting summary judgment to defendants for search of student's notebook where searches and seizures were conducted in a reasonable manner when balanced against school's interest in ensuring safety and welfare of students); Canty v. Old Rochester Reg'l Sch. Dist., 54 F. Supp. 2d 66, 72 (D. Mass. 1999) (stating First Circuit caselaw establishes duty on schools to protect their students from a known danger). See also Bouley v. City of New Bedford, No. CIV.A. 00-CV-12580RG, 2005 WL 3287924, at *7 (D. Mass. Dec. 5, 2005) (concluding information gathered by school was related to "legitimate business (or academic) interest in workplace safety and student and employee well-

being"). In short, the well-established public interest in the safety and welfare of students, on school property, during school hours and at school-sponsored events, is significant as compared to the hardships plaintiff alleges he will suffer, and weighs against an award of a preliminary injunction in the present case.

For the same reasons as stated above, injunctive relief is not in the public interest in this case. See Tripp v. Imbusch, 2014 WL 547044, at *3 (D. Mass. Feb. 11, 2014) (government has an interest in ensuring the safe and orderly departure of students from school). See also Jones v. Bay Shore Union Free Sch. Dist., 170 F. Supp. 3d 420, 433 (E.D.N.Y.), aff'd, 666 F. App'x 92 (2d Cir. 2016) (quoting Lloyd v. Grella, 83 N.Y.2d 537, 547 (1994). ("[s]chools possess the right to 'exercise ultimate authority for access to students, school buildings and school property'").

Plaintiff has failed to make a "clear showing" that he is entitled to the "extraordinary and drastic" relief of a preliminary injunction and, therefore, his Motion should be denied.

## IV.   CONCLUSION

For the reasons set forth above, this Honorable Court should deny plaintiff's Emergency Motion for a Temporary Restraining Order and Preliminary Injunction.

> The Defendants,
> SCHOOL COMMITTEE OF GLOUCESTER &
> BEN LUMMIS, in his official and personal capacities,
> By their Attorneys,
>
> **PIERCE DAVIS & PERRITANO LLP**
>
> */s/ Matthew J. Hamel*
> _____
> John J. Davis, BBO #115890
> Matthew J. Hamel, BBO #706146
> 10 Post Office Square, Suite 1100N
> Boston, MA 02109
> (617) 350-0950
> jdavis@piercedavis.com

mhamel@piercedavis.com

Dated: December 20, 2022

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on December 20, 2022.

*/s/ Matthew J. Hamel*

_____

Matthew J. Hamel, Esq.