# Exhibit A

Modified No Trespass Order
with Attached Policies
January 13, 2023



# The GLOUCESTER PUBLIC SCHOOLS

**Ben Lummis**
**Superintendent of Schools**
2 Blackburn Drive
Gloucester, MA 01930
Phone: 978-281-9800/Fax: 978-281-9899
Email: blummis@gloucesterschools.com

January 13, 2023

<u>**USPS Mailed**</u>

Mr. Jeff Worthley

Dear Mr. Worthley

**SUBJECT:    NO TRESPASS ORDER**

Please be advised that the no trespass order issued on November 14, 2022, is hereby modified as follows:

You may appear at Gloucester High School sponsored events which are generally open to the public, provided you agree to conform to all applicable Gloucester Public School policies, including but not limited to:

- GBJA CORI Checks
- IJNDD Social Networking Policy
- IJOC School Volunteers
- JJ After School Activities
- KH Solicitation in Schools
- KI Visitors to the Schools

You may appear at the following Gloucester High School sponsored events to which Gloucester City Councilors are customarily invited:

- NHS Induction Ceremony – March 23, 2023
- Spring Musical – April 6, 7, 8, 2023.
- Vocational Awards Night – May 11, 2023
- ROTC Awards Night – May 12, 2023
- Art Show and Awards Night – May 18, 2023
- Academic Recognition Night – May 25, 2023
- Awards Night – June 9, 2023
- Graduation – June 11, 2023

You may appear at Gloucester High School sponsored events or activities related to your parental duties as the parent of a rising eighth grader.

**Our Mission is for all Students to be Successful, Engaged, Lifelong Learners**

You shall refrain from entering on or remaining in or upon Gloucester High School buildings or surrounding grounds while school is in session from January 12, 2023 to the end of the 2022-2023 school year, with the above listed exceptions.

Unless expressly stated otherwise, you shall not represent yourself as being a representative of, or involved in, Gloucester Public School-sponsored volunteer events to students, their families, or Gloucester Public School staff.

You shall not solicit personal information from Gloucester High School students while on Gloucester High School property.

This no trespass order and restriction is absolute and unconditional and is to continue to be in force and effective, regardless of whatever real or pretended reason, purpose, motive, intention or emergency you may have, pretend to have, or offer as an excuse for your entering, or wanting to enter, said premises.

This notice is given under Massachusetts General Law, Chapter 266, Section 120 and among other things, provides that a person trespassing in violation of a notice such as this may be arrested immediately without a warrant.  It has been concluded that it is in the public interest and safety and necessary for the protection of the Gloucester High School community to impose this restriction on you at this time.

On or about November 14, 2022 you were offered a hearing before a designee of the Superintendent to express your concerns and your requests for modifications or revocation of this order, you are still welcome to take advantage of that offer with regard to this modified order.

You are hereby put on notice that as long as this notification or any amendment remains in effect, if you choose to ignore same you may be subject to criminal trespass and other offenses as provided for by law and subject to arrest. All other rights, claims, and remedies of the School District are hereby reserved and not waived.  The School District reserves the right to amend or modify this notice as is necessary.


Respectfully submitted,

Ben Lummis
Superintendent

# **CRIMINAL OFFENDER RECORD INFORMATION CHECKS**

1. **Introduction**

   In the public school context Criminal Offender Record Information (CORI) checks are intended to protect students from individuals who may harm them while they are at school or engaged in a school related activity sponsored by the school district.

2. **Scope**

   2.1 It shall be the policy of the Gloucester Public Schools to obtain from the Criminal History Systems Board all available Criminal Offender Records Information of:

   (a) prospective employee(s)
   (b) volunteer(s) who may have direct and unmonitored contact with students when no other Criminal Offender Record Information cleared employee of the school or district is present
   (c) volunteers who help to supervise students on a residential visit
   (d) any individual who regularly provides school related transportation to children, including employees of taxicab companies who may have direct and unmonitored contact with students
   (e) cooperative education/internship site employers/co-workers who may have direct and unmonitored contact with students participating in such programs.

   2.2 A person having only the potential for incidental unsupervised contact with students in commonly used areas of the school grounds, such as hallways, shall not be considered to have the potential for direct and unmonitored contact with students. These excluded areas do not include bathrooms and other isolated areas (not commonly utilized and separated by sight or sound from other staff) that are accessible to students.

   2.3 The Superintendent of schools shall ensure that on the application for employment and/or volunteer form there shall be a statement that as a condition of employment or volunteer service the school district is required by law to obtain Criminal Offender Record Information for any employee or volunteer who may have direct and unmonitored contact with students.

3. **Initial Checks**

   3.1 CORI checks will be completed prior to hiring employee(s) or accepting any person as a volunteer or supervisor/co-worker of students as defined above.

3.2   The Superintendent of Schools shall ensure that on the application for employment and/or volunteer form and/or cooperative education agreement there shall be a statement that as a condition of employment, volunteer or other service the school district is required by law to obtain a Criminal Offender Record Information for any employee, or individual who regularly provides school related transportation, or volunteer, who may have direct and unmonitored contact with students during their term of employment or volunteer service.

3.3   In accordance with state law all current and prospective employees and others within scope of this policy shall sign a request form authorizing receipt by the district of all available CORI data from the Criminal History Systems Board. All applicants are required to verify their identity by providing a government issued photographic form of identification. The signing of the request form is mandatory for all current and prospective employees, volunteers, and persons regularly providing school-related transportation for students. Any concerns regarding the signing of the request form shall be brought to the attention of the Superintendent of Schools or his/her designee. Failure to sign the CORI request form may result in disciplinary action consistent with the collective bargaining agreement and/or personnel policies.

3.4   In the event that a current employee has questions concerning the signing of the request form, he/she may meet with the Superintendent or his/her designee.

3.5   Employment applications shall include questions concerning criminal records which the Massachusetts Commission Against Discrimination has determined may be legally asked of prospective employees. Any employment application which seeks information concerning prior arrests or convictions of the applicant shall include the following statement: "An applicant for employment with a sealed record on file with the commissioner of probation may answer "no record" with respect to an inquiry relative to prior arrests, criminal court appearances or convictions. In addition, any applicant for employment may answer "no record" with respect to any inquiry relative to prior arrests, court appearances and adjudications in all cases of delinquency or as a child in need of service which did not result in a complaint transferred to the superior court for criminal prosecution.

3.6   Records sealed pursuant to law shall not operate to disqualify a person in any examination, appointment or application for public service on behalf of the Commonwealth or an political subdivision thereof.

4. **Periodic Checks**

4.1   The Superintendent of Schools shall periodically, but not less than every three years, obtain all available Criminal Offender Record Information from the Criminal History Systems Board on all employees, and individuals who fall within the scope of this policy.

4.2     All employees and persons falling within the scope of this policy as set out in section 2.1 shall be informed, in writing, by the Superintendent of Schools prior to the periodic obtaining of their criminal offender record information.

## 5. Contractors and Contracts

5.1     The Superintendent of Schools shall ensure that contracts with organizations which provide services on school premises specify that the contractor shall cooperate with the district so as to ensure that his /her employees who perform work on school grounds and premises, and who may have direct and unmonitored contact with students, shall be notified of the CORI requirement and will be asked to comply with the appropriate provisions of this policy.

5.2     The Superintendent shall revise contracts with special education schools and other providers to require a signed statement that the provider has met all the legal requirements of the state where it is located relative to criminal background checks for employees and others having direct and unmonitored contact with students.

## 6. Determination

6.1     Access to CORI material is restricted to those individuals designated to receive such information. In the case of prospective employees or volunteers, CORI material shall be obtained only where the Superintendent of Schools has determined that the applicant is qualified and may forthwith be recommended for employment or volunteer duties.

6.2     If the CORI record provided by the Criminal History Systems Board does not exactly match the identification information provided by the applicant the district will make a determination based on a comparison of the CORI record and documents provided by the applicant. The district may request a further search by the Criminal History Systems Board.

6.3     If the district reasonably believes that the CORI record belongs to the applicant, then a decision regarding suitability for the position will be made.

6.4     The hiring authority, subject to applicable law, reserves the exclusive right concerning any employment decision made pursuant to Chapter 385 of the Acts of 2002. The employer may consider the following factors when reviewing CORI: the type and nature of the offense; date of the offense and whether the individual was subsequently arrested, as well as any other factors the employer deems relevant.

6.5  CORI may be shared with the individual to whom it pertains, upon his or her request. Prior to making an adverse decision the school district will: (1) notify the individual of the potential adverse decision based on a CORI report; (2) provide a copy of the CORI report and the district's CORI policy to the applicant; (3) provide a copy of the Criminal History System Board's information concerning the process involved in correcting a criminal record; (4) inform the individual which part of the criminal record appears to make him/her ineligible; (5) provide the individual with an opportunity to dispute the accuracy and relevance of the CORI report; and (6) upon receipt of additional documentation from the applicant and/or the Criminal History System Board, review the information with the applicant and inform him/her of the decision.

6.6  The district will notify the applicant of a decision involving a CORI check in a timely manner.

**Confidentiality**

Completed request forms shall be kept in secure files. The School Committee, and the Superintendent of Schools or their designees certified to obtain information under this policy shall prohibit the dissemination of CORI check information for any purpose other than to further the protection of students. CORI is not subject to the public records law and must be kept in a secure location, separate from personnel files and may be retained for not more than three years.

LEGAL REFERENCE:   M.G.L. 71:38R, 151B, 27, §.100A, St.2002, c.385
　　　　　　　　　　D.O.E. Advisory on CORI Law (Feb 17, 2003)

# SOCIAL NETWORKING POLICY

**I.**     **Internet AUP Still in Force**

This policy is adopted in addition to, and not as a substitute for, the Gloucester Public School District's Internet Acceptable Use Policy, which governs use of the school district's technological resources.

The following policy applies to all staff and volunteers of the Gloucester Public School District.

Although comments below may refer to staff members/volunteers, it is to be understood that all who are members of the Gloucester Public Schools community are subject to this policy.

**II.**     **General Concerns**

The Gloucester Public Schools recognizes the proliferation and, in some instances, usefulness, of online conversation and the sharing of media between teachers and students, and/or their parents or guardians. However, due to the nature of social networking sites, there exists a risk, without care and planning, that the lines between one's professional life and personal life will be blurred. Our staff should always be mindful of how they present themselves to the world, online and otherwise. Should an educator "friend" a student on Facebook, subscribe to a student's "twitter" account, regularly engage in email "chat" with a student, exchange text messages, photographs, video, or visual media of any kind with students or engage in any other form of electronic communication, the school district is concerned, and the educator should be concerned, that such activities may undermine the educator's authority to maintain discipline, encourage inappropriate behaviors and compromise the educator's ability to remain truly objective with his or her students.

In addition, any online communication using one's own personal resources, as opposed to school district resources, compromises the staff member's/volunteer's, as well as the school district's ability to retain public records in accordance with the requirements of the Commonwealth's public records laws. The law requires public employees who send, receive or maintain records in their capacity as public employees, to retain, disclose and dispose of such records in compliance with strict provisions of the public records law. This law applies whether or not the record is in the form of a paper document or an electronic communication. When staff members/volunteers communicate through school-based resources, such as staff email or school sponsored web pages, such records are retained and archived through the school's information technology department. If, however, a staff member/volunteer communicates outside of these resources, such information is not retained. The burden falls on the staff member/volunteer to comply with public records laws when using personal email or social network accounts to communicate with students and/or parents and guardians.

### III.    Expectations of Staff

With these concerns in mind, the Gloucester Public Schools has instituted this "Social Networking Policy," and announces its expectations for staff members'/volunteers' use of social networks such as Facebook, LinkedIn, Twitter, personal email accounts, text message features of cell phones, use of blogs, and other electronic or technologically based communication systems.

1. Before endeavoring to establish any social networking account, staff members/volunteers should familiarize themselves with the features of any account they choose to use. For example, Facebook requires account holders to take specific steps to "privatize" the information they place online. The staff member must educate himself/herself to the features of Facebook or any other social networking site he/she selects. The staff member will be responsible should any information—written, visual, or spoken—which he/she intended to be "private" become "public" due to his/her own ignorance of the features of the social network you have decided to use or your failure to properly use such features.

2. The staff member must also know that any information shared privately with a recipient could be re-distributed by such recipient, without the staff member's knowledge or consent. The same principles that the staff member applies to in-person communications should be applied to online communications: use discretion, and do not place trust in individuals who have not proven themselves trustworthy. In essence, nothing the staff member posts online is ever truly "private."

3. The school district expects the staff member to keep the line between his/her professional life and personal life clearly drawn at all times. There is no reason why this cannot be done, even in light of the proliferation of social networking sites. All that is required is some forethought before using social networking for both the staff member's professional and personal life, to be sure that these lines never become blurred.

    For example, if a staff member/volunteer wishes to establish a Facebook or personal email account through which he or she will communicate with students, he or she should establish a Facebook identity and email identity that is separate from his/her "personal" Facebook identity or personal email account. He/she should only use his/her educational Facebook account or educational email account to communicate with students and/or parents and guardians on matters directly related to education. The "friends" associated with such an educational Facebook account should only be members of the educational community, such as administrators, teachers, students, and parents of such students. It is strongly recommended that staff members/volunteers will reject friend requests from individuals who do not fit into any of these categories.

4. At all times, and in the use of any form of communications, staff members/ volunteers will always adhere to student privacy rights and the rights of employees to have their personnel and medical information kept confidential. Information that is protected by law from disclosure to third parties will not be communicated online in a way that unreasonably exposes such information to retrieval by those third parties. For example, through an educational Facebook account, a staff member/volunteer may not post confidential student information on the "wall", the "information" section, or through any part of that Facebook account that would be accessible to any other of the staff member's/volunteer's Facebook "friends" associated with that account. Student names, pictures, and/or any other information that could identify a student should not be shared by a staff member. If a teacher wishes to communicate privately with a student through the educational Facebook account, such communication shall be conveyed only through the private email/message feature of Facebook, so that only the student may view the message and respond to it.

5. Staff members/volunteers are encouraged to communicate with students and parents on educational matters only, and only through school-based resources, such as school-provided email or web portal accounts. Use of one's personal email account or social networking account to discuss school business with students and parents is discouraged. It should be noted that, just because a staff member/volunteer uses his/her personal email as opposed to a school email account, this does not shield such email from the provisions of the public records law or from discovery in litigation.

   It only prevents the archiving of such messages through the school district's automatic email archiving system. We again remind staff members/volunteers that information sent or received by them, even through personal email or social network accounts, that are related to their capacity as a school employee, are still subject to public records retention, exemption and disclosure requirements.

6. If a staff member/volunteer conveys school-related messages to students and parents on his/her private account, he/she should save such email or any communication conveyed through a social networking site, or print and save a paper copy of such email or other online communication, and file it, and regard its privacy, as he/she would any other document concerning that student. The staff member/volunteer should forward copies of any such emails or online communications to his or her school-based email account so that it can be properly retained and archived in compliance with the requirements of the public records law. Any document created or received by a public employee in his or her capacity as such is subject to retention, and perhaps disclosure under the public records law.

7. No matter what medium of communication a staff member/volunteer selects, he/she should adhere to appropriate teacher/student boundaries. The staff member is a role model, not a student's friend; the staff member is his/her teacher (for example), and should always conduct himself/herself in accordance with this understanding. Staff members/volunteers remain mandated reporters. If a student indicates he/she is at risk, neglected or is being harmed, the staff member is required by law to report such neglect or harm to the Department of Children and Family Services. The staff member should follow the District's protocol for mandated reporting of abuse. Staff members should not communicate with students about personal matters and/or make negative statements about students.

8. This policy is not intended to infringe upon a staff member's/volunteer's right to speak publicly on matters of public concern, or to communicate with fellow members of their union on workplace issues, so long as such communication adheres to appropriate time, place and manner restrictions, does not interfere with the performance of the staff member's job duties and does not disrupt the educational process. However, when a staff member speaks via social networking sites or tools on personal matters concerning work and not a matter of public concern, the staff member is speaking as an employee and not as a citizen, and restrictions may be placed upon the staff member's freedom of expression. These restrictions are intended to preserve student confidentiality, maintain the staff member's status as an educator who should command and receive the respect of students, be able to maintain order and discipline in the staff member's classroom, remain objective with respect to the staff member's students, and support the operation of the school department.

9. Staff members/volunteers are discouraged from using home telephones, personal cell phones, personal email accounts and personal Facebook accounts to communicate with students. Communications with students, even if the staff member does not use school resources for such communications, are within the jurisdiction of the school district to monitor as they arise out of the staff member's position as an educator.

   Any conduct, whether online or not, that reflects poorly upon the school district or consists of inappropriate behavior on the part of a staff member, may expose an employee to discipline up to and including discharge. Even if the staff member is not using a school telephone, computer, classroom or the like to engage in contact with a student, such contact is not outside of the school district's authority to take appropriate disciplinary action. If the behavior is inappropriate, undermines the staff member's authority to instruct or maintain control and discipline with students, compromises the staff member's objectivity, or harms students, the school district reserves the right to impose discipline for such behavior. A staff member/volunteer may also face individual liability for inappropriate online communications with students and/or parents and guardians, as well as exposing the district to vicarious liability in certain instances.

At the same time, the district recognizes that, in limited cases, use of cell phone text messages or cell phone calls or emails outside of regular school hours may be reasonably necessary. For example, in connection with school sponsored events for which staff members/volunteers serve as duly appointed advisors, they may need to convey messages in a timely manner to students and may not have access to school based email accounts, school provided telephones or school-based web pages. In such limited circumstances, the district anticipates that staff members/volunteers will make reasonable use of their cell phones or smart-phones to convey time sensitive information on scheduling issues and the like.

10. Staff members/volunteers may not access their personal email accounts or private Facebook accounts using school district computer resources.

11. If the staff member is communicating as an employee of the district in the staff member's online communications, the staff member must be aware that readers will assume that the staff member "speaks for the school district." Therefore, all online communications, written or visual (e.g., photography, video, etc.), whether the staff member is actually acting on behalf of the district, or creating the appearance that he/she is doing so, must be professional at all times and reflect positively on the school district.

12. In the use of a Facebook account or other social networking site, the staff member may not, without express permission from the superintendent of schools, use the school's logo, likeness or any school photographs or other property that belongs to the school.

13. References to various social networks are not included to limit application of their policies to use of just those sites or programs. All online, electronic or computerized means of communication are subject to this policy. Given the rapid pace of technological change it is not possible to identify all proprietary or commonly named or identified means of such communications.

*Approved Amended by the School Committee on January 10, 2018*

File: IJOC

# SCHOOL VOLUNTEERS

It is the policy of the School Committee to encourage volunteer efforts in the schools. Parents/guardians, business representatives, senior citizens, and other community volunteers are recognized as important sources of support and expertise to enhance the instructional program and vital communication links with the community. The volunteer program will be coordinated in cooperation with building administrators.

Volunteers working in classrooms must agree not to violate the confidentiality of the classroom. Principals will provide information about this in the form of a booklet, "Guidelines for Volunteer", which will be available in each office.

CROSS REF.:     ADDA, C.O.R.I. Requirements

# AFTER SCHOOL ACTIVITIES

## Purpose

The School Committee believes that participation in after school programs provides students with important opportunities for extending their learning after the formal school day.

After school activities typically involve the extension and acquisition of personal and team knowledge and skills, including critical thinking and problem solving, and the development of social and emotional intelligence through participation in collaborative and team pursuits. After school activities provide students with opportunities for exploring new interests, for disciplined commitment, creativity, leadership, citizenship, and the practice of ethical behavior and accountability to their peers.

After school activities also provide an opportunity for students to relate to adults in a less formal setting than the classroom. Sponsors of after school activities and athletic coaches have opportunities to be significant role models, to share enthusiasms, knowledge and skills, and to enable students to work together towards common purposes and shared goals.

Success in competition or excellence in performance should not be the sole criterion of quality. Opportunity for student participation and development are also important goals of after school programs.

## Participation

With certain exceptions, all after school programs shall be open to students at the appropriate grade level who are residents of Gloucester, subject to their meeting all the eligibility criteria that must be satisfied by students attending GPS schools, and payment of the appropriate participation fee.

The exceptions are those competitive sports in which a team representing GHS or O'Maley Innovation Middle School is selected by its coach; i.e. sports in which a restricted number of students are on a team or in a squad. Students resident in Gloucester attending schools other than GPS schools may participate in no-cut competitive athletic events as individuals, but not represent a GPS school.

Gloucester students who are home-schooled and are therefore considered the responsibility of the school district are entitled to participate in all activities, including cut sports if there are insufficient GPS students to make up a team.

Participation in high school interscholastic athletics shall be in accordance with the regulations and recommendations of the Massachusetts Interscholastic Athletic Association.

Participation in interscholastic athletics shall require the presentation of written proof of parental approval and medical insurance, and fitness to participate signed by a certified physician prior to participation.

In the case of students attending schools outside Gloucester, written proof of parental approval must be provided for participation in any after school activity. The note of approval must be countersigned by the
Principal of the school attended by the student to confirm the school's awareness of the participation.

In order to train or compete or participate students must be in good standing academically and socially, and have attended school on the day in question.

**Participation Fees**

The School Committee shall set annual participation fees for different activities.

Principals have discretion to waive participation fees for students who would otherwise be prevented from participating in the program.

Activity sponsors and coaches shall be responsible for the timely collection of participation fees.

Principals and Department Heads will be responsible for the timely banking of participation fees in appropriate revolving accounts.

**Activity Sponsors and Athletic Coaches**

The appointment of activity sponsors and athletic coaches shall be recommended to the Superintendent of Schools by the relevant school Principal, who shall also be responsible for evaluation arrangements at the conclusion of each athletic season or activity year.

Coaches will be paid a stipend for each season for which they are responsible after the end of the season.

Sponsors of an after school activity will receive payment at the end of the school year.

In order to secure progression in opportunities and expectations, the Principal of O'Maley Innovation Middle School will consult with the Athletic Director of GHS on the scope of the middle school program and the appointment of coaches.

## School Committee Funding and Support

Within the overall budget available, the School Committee will endeavor to provide funding support for after school activities, taking account of projected participation fees and other revenue generated by the activity.

The School Committee appreciates the opportunities for after school activities that are provided by volunteers.

*Approved Amended by the School Committee on 9/27/17*

# SOLICITATION IN SCHOOLS

It is the desire of the School Committee to place limits on commercial activities and fund-raising activities in the schools for the following reasons:

1. The school system should use discretion to provide students, parents/guardians, and employees some measure of protection from exploitation by commercial and charitable fund-raising organizations.

2. The school system should not give the public the impression of generally endorsing or sanctioning commercial and fund-raising activities.

3. Commercial and fund-raising activities may disrupt school routine and cause loss of instructional time.

4. Activities must be shown to be related to the objective of the School / School District.

Following these guiding statements, the Superintendent, relative to <u>profit</u> making group requests, and Principals, relative to <u>non-profit</u> group requests, may permit occasional student/staff distributions relative to fund-raising activities.

# VISITORS TO THE SCHOOLS

The School Committee encourages parents and guests to visit classrooms to observe and learn about the instructional programs taking place in our schools. Such visits can prove most beneficial in promotion of greater school-home cooperation and community understanding of how we carry out the school system's mission and goals.

Visits by parents to several classrooms in a given grade for the purposes of comparing teaching styles to provide a basis for a request for student assignment to a particular teacher are strongly discouraged because the School District's policy of assigning a student to a particular class is the sole responsibility of the building Principal in consultation with the staff of that school.

The following guidelines to classroom and school visits should be followed:

1. Parental requests for classroom visitations will be welcomed as long as the educational process is not disrupted. To this end we request that such requests be made at least forty-eight hours in advance to allow for proper arrangements to be made.

2. The building Principal has the authority to determine the number, times, and dates of observations by visitors. This will be done in consultation with staff members so as to give adequate notice to the staff members of the impending visits.

3. For security purposes it is requested that all visitors report to the Principal's office upon entering and leaving the building and sign a guest log showing arrival and departure times. Teachers are encouraged to ask visitors if they have registered in the Principal's office.

4. Under ordinary circumstances classroom observations will be strongly discouraged during the first three weeks of school in September and during the month of June.

5. Any student who wishes to have a guest in school MUST ask permission of one of the administrative staff 24 HOURS in advance of the proposed visit. If permission is granted, the guest is expected to follow the standards of behavior expected of all students. Upon arrival the guest must register in the office. Any guest who fails to comply with student regulations will be asked to leave the school building and grounds immediately.

CROSS REF.: IHBAA, Observations of Special Education Programs