UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEFFREY T. WORTHLEY, <br><br> Plaintiff, <br><br> v. <br><br> SCHOOL COMMITTEE OF GLOUCESTER and BEN LUMMIS, in his official and personal capacities, <br><br> Defendants. | Case No. 22-cv-12060-DJC |

<u>**MEMORANDUM AND ORDER**</u>

**CASPER, J.**                                                                                                                April 12, 2023

**I.      Introduction**

On November 14, 2022, Defendants School Committee of Gloucester and Ben Lummis ("Lummis"), Superintendent of Gloucester Public Schools (collectively, "Defendants") issued a no trespass order ("the November 14th Order") against Plaintiff Jeffrey T. Worthley ("Worthley"). D. 1-2 ¶ 42; <u>id.</u> at 39. Worthley moved to enjoin the November 14th Order. D. 8. After the conclusion of the hearing on the motion, D. 21, the Court gave the parties time to attempt to resolve or narrow their dispute. Although the parties did not resolve the matter, on January 13, 2023, Defendants issued a modified no trespass order ("the January 13th Order") against Worthley, D. 28-1, which excised a number of the prohibitions that Worthley had challenged in the November 14th Order. On January 24, 2023, the Court allowed Worthley's motion for injunctive relief as to the November 14th Order, D. 29, as Worthley continued to press that challenge. D. 25. Worthley has now moved for injunctive relief as to the January 13th Order. D. 43. For the reasons stated below, the Court DENIES the motion except that it

1

ALLOWS it only as to the provision barring Worthley from representing himself as a representative of, or being involved in, Gloucester Public School-sponsored volunteer events.

## II. Standard of Review

Preliminary injunctive relief remains an "extraordinary and drastic remedy." Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (quoting Munaf v. Geren, 553 U.S. 674, 689–90 (2008)).  On a motion for a preliminary injunction, the Court must consider "[1] the movant's likelihood of success on the merits of [his] claims; [2] whether and to what extent the movant will suffer irreparable harm if the injunction is withheld; [3] the balance of hardships as between the parties; and [4] the effect, if any, that an injunction (or the withholding of one) may have on the public interest." Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 9 (1st Cir. 2013) (citing Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996)).

## III. The Court's Ruling on the Prior Motion for Injunctive Relief

In its Memorandum and Order, D. 29, the Court ruled that Worthley was reasonably likely to succeed in showing that the breadth of the November 14th Order--barring him from all school-sponsored events or activities at Gloucester High School ("GHS"), regardless of whether they were open to the public or traditionally attended by members of the Gloucester City Council (of which Worthley is a member)--substantially burdened more of his speech than was necessary given the articulated concern that he obtained a minor's ("KF") cell phone number and texted her without the permission of an adult.  D. 29 at 11.  The Court also ruled that Worthley's loss of First Amendment freedoms constituted irreparable harm, that this harm outweighed Defendants' alleged public safety concern and that protecting Worthley's free speech rights served the public interest. Id. at 15–16.

IV.     **Factual and Procedural Background**

The Court incorporates by reference the factual background from its Memorandum and Order, D. 29, regarding Worthley's first motion for injunctive relief from the November 14th Order. Id. at 2–7. Here, the Court will address the sequence of events leading to the issuance of the January 13th Order, D. 28-1, and the prohibitions contained therein that Worthley challenges.

Worthley's first motion for injunctive relief, D. 8, was based on the November 14th Order, which barred him from "appear[ing] on or enter[ing] the premises of [GHS] during school hours or at any school sponsored event or activity" for the entirety of the 2022-2023 school year. D. 1-2 at 39. Worthley claimed that under the November 14th Order, he could not see his son perform at events held at GHS, engage his constituents at school-sponsored events that city councilors customarily attend or utilize school-sponsored events and activities to recruit members of the community to join his volunteer corps project. D. 1-2 ¶¶ 45, 54, 63.

During the January 5, 2023 hearing on Worthley's motion for preliminary injunction with respect to the November 14th Order, the Court noted that it would take the matter under advisement but would delay ruling on the motion to allow the parties some time to see if they could reach a resolution of the matter. See D. 21. On January 12, 2023, counsel for both parties submitted statements to the Court. D. 23; D. 24. Defendants stated that they proposed several modifications to the November 14th Order, that the "[t]he parties continue[d] to engage in good faith negotiations" and that Defendants would "provide the Court with a further update by January 19, 2022" regarding these efforts. D. 23 ¶¶ 3–4. Worthley indicated that he rejected the proposed modifications because they did not address any of his requirements and raised "significant new First Amendment issues" and asked the Court to grant the injunctive relief that he had sought. D. 24 at 1. On January 19, 2023, Defendants notified the Court that they issued

3

the January 13th Order which superseded the November 14th Order, D. 28-1, against Worthley. D. 28 ¶ 4.  On January 19, 2023, Worthley filed a motion indicating that he still sought resolution of his original motion for injunctive relief as to the November 14th Order.  D. 25.

The January 13th Order eliminates several of the restrictions that were contained in the November 14th Order.  Under the January 13th Order, Worthley may appear at school-sponsored events which are generally open to the public (provided that he adheres to certain Gloucester Public School policies), enumerated events to which "Gloucester City Councilors are customarily invited" and events or activities that relate to his "parental duties as the parent of a rising eighth grader." D. 28-1 at 2.  Like the November 14th Order, however, the January 13th Order otherwise prohibits Worthley from entering GHS "while school is in session from January 12, 2023 to the end of the 2022-2023 school year." Id. at 3.  The January 13th Order also imposes new restrictions, barring him from "represent[ing] [himself] as being a representative of, or involved in, Gloucester Public school-sponsored volunteer events to students, their families, or Gloucester Public School staff" and from "solicit[ing] personal information from [GHS] students while on [GHS] property." Id.  Worthley now seeks to enjoin the January 13th Order.[1] D. 43.

**V.   Discussion**

Worthley brings 42 U.S.C. § 1983 claims premised on violations of his free speech rights under the First Amendment (Count I) and his procedural due process rights under the Fourteenth

---

[1] The Court declines Worthley's request for an evidentiary hearing.  D. 46 at 2.  The Court heard oral argument on January 5, 2023, D. 21, where Worthley had "a fair opportunity to present relevant facts and arguments to the court," Aoude v. Mobil Oil Corp., 862 F.2d 890, 894 (1st Cir. 1988).  Worthley has also not identified the new and relevant evidence he seeks to introduce.  The Court, therefore, finds that the evidence already in its possession, including the affidavits of Ben Lummis, D. 17-1, James Cook, D. 17-2, and Worthley, D. 1-2 at 20-27; D. 20-1 at 54-59, and the various exhibits filed by the parties, is sufficient to resolve the pending motion.

Amendment (Count II).  D. 1-2 at 13–15.  Worthley also asserts claims under the Massachusetts Civil Rights Act ("MCRA") (Counts III and IV), Mass. Gen. L. c. 12, § 11I.[2]  D. 1-2 at 15–16.  The Court first turns to his First Amendment free speech claim.

### A. Worthley's Likelihood of Success on the Merits

#### 1. Worthley's First Amendment Free Speech Challenge to the January 13th Order

As the standard of review of the January 13th Order is the same as it was for the November 14th Order, the Court repeats the relevant parts of that standard here.  D. 29 at 8-9.  Although, as the movant, Worthley bears the burden of establishing that a preliminary injunction should issue, Defendants shoulder much of the burden when it comes to the merits of Worthley's First Amendment claim.  See United States v. Playboy Ent. Grp., Inc., 529 U.S. 803, 816 (2000) (noting "[w]hen the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions") (citation omitted).

"[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired."  Heffron v. Int'l Soc. for Krishna Consciousness, Inc., 452 U.S. 640, 647 (1981).  Under the prevailing constitutional framework, the extent to which a "government can restrict speech turns on the category to which property is assigned."  Curnin v. Town of Egremont, 510 F.3d 24, 28 (1st Cir. 2007).  The Supreme Court has "identified three types of fora: the traditional public forum, the public forum created by government designation, and the nonpublic forum."  Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 802 (1985); Curnin, 510 F.3d at 28.

---

[2] Defendants note that Worthley has not amended the complaint to address the January 13th Order.  D. 45 at 5 n.6.  Given that Defendants modified the November 14th Order while Worthley's previous motion for injunctive relief remained under advisement, the Court considers the same claims from the operative complaint, D. 1-2 at 13–16, and his briefs in support of the pending motion, D. 44; D. 46-1, as to the January 13th Order.

The traditional public forum consists of "places which by long tradition or by government fiat have been devoted to assembly and debate" such as streets and parks. Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n, 460 U.S. 37, 45 (1983). In a traditional public forum, content-based government regulations are subject to strict scrutiny, that is, they are permissible only where "necessary to serve a compelling state interest and . . . narrowly drawn to serve that end." Id. Content-neutral time, place or manner restrictions, on the other hand, are permissible if they are "narrowly tailored to serve a significant government interest and leave open ample alternative channels of communication." Id. "In order to be narrowly tailored, a time, place, or manner restriction must not burden substantially more speech than is necessary to further the government's legitimate interests." Ward v. Rock Against Racism, 491 U.S. 781, 799 (1989).

A school during school hours is typically a nonpublic forum. Nurre v. Whitehead, 580 F.3d 1087, 1093 (9th Cir. 2009). A school can become a public forum, however, "if school authorities have by policy or by practice opened those facilities for indiscriminate use by the general public, or by some segment of the public, such as student organizations." Id. (quoting Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260, 267 (1988)) (internal quotation marks omitted); see Grace Bible Fellowship, Inc. v. Maine Sch. Admin. Dist. No. 5, 941 F.2d 45, 48 (1st Cir. 1991) (concluding that school district that licensed temporarily available school facilities for expressive activities created public forum and could not exclude religious group).

Worthley argues that the January 13th Order was issued "in response to the content of [his] speech," specifically, "discussing volunteer activities with a constituent" and "trading contact information" with that constituent. D. 44 at 13. Worthley also argues that the January 13th Order is a "prior restraint" and that it "is not narrowly tailored to the issue of communicating

6

with a minor or identifying community volunteers during off-school hours." Id. at 16.

First, the Court disagrees that the January 13th Order is a content-based restriction. "In general, a '[g]overnment regulation of speech' is content based, rather than content neutral, if it 'applies to particular speech because of the topic discussed or the idea or message expressed.'" Mar. v. Mills, 867 F.3d 46, 54 (1st Cir. 2017) (alteration in original) (quoting Reed v. Town of Gilbert, 576 U.S. 155, 163 (2015)). A regulation "may be deemed to be content based" in two distinct ways. Id. First, the regulation "may be deemed content based" if it, on its face, "draws distinctions based on the message a speaker conveys." Id. (quoting Reed, 576 U.S. at 163). Second, "facially content neutral" regulations "will be considered content-based regulations of speech" if they "cannot be justified without reference to the content of the regulated speech," or "were adopted by the government because of disagreement with the message [the speech] conveys." Id. (alteration in original) (internal quotation marks omitted) (quoting Reed, 576 U.S. at 164).

Here, the January 13th Order is facially content-neutral as it restricts Worthley's presence at GHS while school is in session with certain exceptions to allow him to attend events open to the public, those to which city councilors are customarily invited or events or activities related to his parental duties. See D. 28-1. Worthley claims that Defendants' "purported concern of an adult and a minor exchanging text messages is window dressing for viewpoint discrimination." D. 44 at 15. But the record does not reflect compelling evidence for this contention. Id. (Worthley alleging that Lummis refused his calls about inspiring student volunteerism for over a year); D. 1-2 at 21 ¶ 11. Instead, the record supports that the January 13th Order is a response to GHS's safety concern raised after Worthley obtained a minor's phone number on GHS property and solicited her participation in his volunteer program without parental consent. See D. 1-2 at

29–33, 35–37; D. 17-1 at 3, 8–10; D. 17-2 at 2–3.  Accordingly, the January 13th Order is a content-neutral time, place or manner restriction.

Second, the Court rejects Worthley's argument that the January 13th Order is a prior restraint.  "A prior restraint is a government regulation that limits or conditions in advance the exercise of protected First Amendment activity." Auburn Police Union v. Carpenter, 8 F.3d 886, 903 (1st Cir. 1993) (citation omitted).  "The Supreme Court has explicitly rejected attempts to analyze security-based time-place-manner restrictions as prior restraints." Bl(a)ck Tea Soc'y v. City Of Bos., 378 F.3d 8, 12 (1st Cir. 2004) (collecting cases).  The First Circuit cautioned that "[i]f content-neutral prohibitions on speech at certain places were deemed prior restraints, the intermediate standard of review prescribed in the time-place-manner jurisprudence would be eviscerated."  Id.  Accordingly, as applied to Worthley, the Court will analyze whether the January 13th Order is narrowly tailored and does not "burden substantially more speech than is necessary to further the government's legitimate interests." Ward, 491 U.S. at 799.

The Court now turns to addressing the specific restrictions in the January 13th Order.

      a)  <u>Provision Barring Worthley from GHS During School Hours</u>

Worthley is not reasonably likely to succeed in challenging the portion of the January 13th Order barring him "from entering on or remaining in or upon [GHS] buildings or surrounding grounds while school is in session from January 12, 2023 to the end of the 2022-2023 school year" given the numerous exceptions for events generally open to the public, events to which city councilors are customarily invited or which are related to his parental duties.  D. 28-1 at 2-3.  As noted above, Defendants may impose reasonable, viewpoint-neutral restrictions on Worthley's access to GHS during school hours, when GHS is a nonpublic forum.  See Cornelius, 473 U.S. at 800 (quoting Perry Educ. Ass'n, 460 U.S. at 46); Nurre, 580 F.3d at 1093.

According to GHS Principal James Cook (based on information from KF's mother), Worthley allegedly asked KF for her phone number when he attended GHS to vote. 17-2 ¶ 6. Worthley disputes this and claims that KF asked him for his number, then voluntarily gave him her number by calling him. D. 1-2 at 22. Worthley does not dispute, however, that he initiated text communications with KF later that evening and solicited her to participate in his volunteer corps without seeking the permission of an adult. See id. at 22–24, 29–33. Although Worthley characterizes the nature of his interactions with KF differently, D. 1-2 at 21–22, than Defendants do, there is evidence that KF and her parents felt uncomfortable about these interactions, D. 17-1 at 3, 8–10, D. 17-2 at 2–3; D. 1-2 at 35–37, and that GHS was concerned about the inappropriate communications with minors without parental consent. D. 45 at 4. Worthley, as a member of the public, does not have a constitutional interest to access the school during school hours, see, e.g., Hannemann v. S. Door Cnty. Sch. Dist., 673 F.3d 746, 755 (7th Cir. 2012) (collecting cases), and school officials have broad discretion in restricting visitors, Embry v. Lewis, 215 F.3d 884, 889 (8th Cir. 2000). Accordingly, the Court concludes that Defendants' decision to bar Worthley from the school during school hours until the end of the school year is reasonable given the perceived safety concern. In addition to the exceptions that allow Worthley to be at GHS for events open to the public, at those events to which city councilors are typically invited and at those related to his duties as the parent of a rising eighth grader, D. 28-1 at 1, Worthley has not explained what constitutional interest he has in being present at GHS during school hours during the school year. Moreover, as Defendants point out, the January 13th Order "leaves open vast and ample alternative channels for communication" as Worthley "as a City Councilor, may continue to engage his constituents, and to the extent such engagement requires the solicitation of personal information from students, may continue to do so on property other than GHS

property under the January 13th Order." D. 45 at 9. That includes, as Defendants acknowledge, that "[Worthley] is free to solicit personal information from GHS students anywhere else." Id.

                b)        The January 13th Order Also Does Not Constitute a Prior Restraint

Worthley's argument that the January 13th Order constitutes a prior restraint also fails. The Court previously noted that the November 14th Order, "in banning Worthley from all school sponsored events or activities . . . prospectively restrict[ed] far more speech than Worthley's communications with high school students without their parents' permission." D. 29 at 12. The same is not true with the January 13th Order, which is more narrowly tailored in this regard than the November 14th Order, permitting Worthley to "appear at [GHS] sponsored events which are generally open to the public" given his adherence to certain school policies, those to which city councilors are customarily invited and those related to his parental duties to provided [he agrees] to conform to all applicable Gloucester Public School policies . . ." D. 28-1 at 2.

To the extent that Worthley argues that subjecting his attendance at GHS events open to the public on his adherence to certain, enumerated Gloucester Public School policies constitutes a prior restraint, that argument also fails. Since conditioning Worthley's ability to appear at GHS-sponsored events generally open to the public on his compliance with certain school policies would be when GHS was a designated public forum, the Court has considered same as content-neutral restrictions on speech in a designated forum, which require intermediate scrutiny. Perry, 460 U.S. at 45; Summum, 555 U.S. at 469-70. Despite this heightened standard, the Court concludes that even such adherence to these school policies under the January 13th Order is permissible because they are "narrowly tailored to serve a significant government interest and leave open ample alternative channels of communication." Perry, 460 U.S. at 45.

Under the January 13th Order, Worthley's attendance will be subject to his compliance

with certain policies that otherwise only apply to employees and volunteers of the Gloucester Public Schools, including the Criminal Offender Record Information ("CORI") Checks, Social Networking, School Volunteers, After School Activities, Solicitation in Schools and the Visitors to the Schools policies. Id.; see D. 26-1 at 8–18. Worthley argues that subjecting him to all of these policies violates his First Amendment rights, D. 44 at 17-19, but only addresses the CORI, Social Networking, Volunteers and Visitors policies as applied to him, D. 44 at 18 n.10, so the Court focuses on those policies. The CORI Checks policy requires Worthley to consent to a CORI check should he have direct and unmonitored contact with students "when no other [CORI] cleared employee of the school or district is present," but makes clear that this requirement does not apply to a person "having only the potential for incidental unsupervised contact with students in commonly used areas of the school grounds." Id. Requiring a CORI check in the first instance given this exception for incidental contact is narrowly tailored to a significant governmental interest in student safety. See Embry, 215 F.3d at 889 (noting that "school officials have broad discretion in restricting visitors on school property to protect the safety and welfare of the school children"). This policy also leaves open ample, alternative channels for communication because Worthley remains free to appear and speak at school-sponsored events and activities generally open to the public without consenting to a CORI check so long as he does not have direct and unmonitored contact with students outside of the incidental contact described above. Application of the Social Networking Policy also satisfies the requisite scrutiny. Given Defendants' position that Worthley may continue to engage his constituents, including "the solicitation of personal information from students" provided that same occurs "anywhere else" but on GHS property, D. 45 at 9, presumably this policy only applies to Worthley while on GHS property. Accordingly, the application of this policy is

11

narrowly tailored and leaves open ample alternative channels of communication. See D. 26-1 at 11. The School Volunteers policy requires Worthley "to agree not to violate the confidentiality of the classroom," D. 26-1 at 13, and he offers no reason why such restriction is not narrowly tailored to protect student privacy or does not leave open ample alternative channels of communication since it applies only to the classroom. See Schuloff v. Murphy, No. 96-CV-1242 (FB), 1997 WL 588876, at *3 (E.D.N.Y. Sept. 17, 1997) (recognizing student privacy as a "compelling governmental interest"). Finally, the Visitors to the School policy "request[s] that all visitors report to the Principal's office upon entering and leaving the building," "sign a guest log showing arrival and departure times" and "follow the standards of behavior expected of all students." D. 26-1 at 18. Again, this provision is narrowly tailored to protect student safety and Worthley retains ample channels of communication.

For all of these reasons, the provisions of the January 13th Order restricting his presence at GHS, including the application of certain, enumerated school policies, are not a prior restraint and satisfy intermediate scrutiny as content-neutral time, place and manner restrictions.

        c)        <u>Provision Barring Worthley from Representing Himself as a Representative of Gloucester Public School-Sponsored Events</u>

Unlike the other provisions of the January 13th Order, the provision that prohibits Worthley from "representing [him]self as being a representative of, or involved in, Gloucester Public School-sponsored volunteer events to students, their families, or Gloucester Public School staff," D. 28-1 at 3, is aimed at speech and not limited to Worthley's presence on GHS property. Defendants argue that this restriction "is sufficiently narrowly tailored to further the Defendant's compelling government interest in securing the safety and privacy of students entrusted to the public schools," D. 45 at 11, but the Court disagrees.

As noted above, content-neutral restrictions on speech are permissible if they "are

narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." Perry, 460 U.S. at 45. Although Defendants have a significant government interest in student safety, this provision will only be narrowly tailored to his presence at GHS as the other provisions of the no-trespass order are so limited and, thereby leave ample alternative channels of communication. Although Defendants contend that the restriction is narrowly tailored to subject matter (i.e., Worthley's misrepresentations about his affiliation with GHS) and to the recipients (i.e., students, parents and staff), all such recipients are members of the public and without a time, place and manner restriction, Worthley would not be free to make such representations to the general public as Defendants suggest. D. 45 at 11. Accordingly, unlike the other provisions of the January 13th Order, it would not allow for ample, alternative channels of communications. Moreover, there is Supreme Court precedent to support Worthley's contention that he has a constitutional right to make even false representations about himself, relying on United States v. Alvarez, 567 U.S. 709 (2012). D. 46-1 at 8 n.9.[3] In Alvarez, a plurality of the Supreme Court struck the Stolen Valor Act that targeted "falsity and nothing more," and thus "infringe[d] upon speech protected by the First Amendment." Alvarez, 567 U.S. at 719, 722, 730. In reaching this decision, the plurality noted that "[a]bsent from those few categories where the law allows content-based regulation of speech [i.e., words to incite imminent lawless action, defamation, fraud, fighting words, etc.], is any general exception to the First Amendment for false statements. This comports with the common understanding that some false statements are inevitable if there is to be an open and vigorous expression of views in public and private conversation, expression the First Amendment seeks to guarantee." Id. at 718. It should be noted, of course, that two of the justices who concurred in the judgment in Alvarez

---

[3]The Court ALLOWS Worthley's motion to file a reply brief, D. 46, *nunc pro tunc*, and has considered that reply brief, D. 46-1, in the resolution of his motion for injunctive relief.

opined that laws punishing false statements would be permissible where they "limit the scope of their application, sometimes by requiring proof of specific harm to identifiable victims; sometimes by specifying that the lies be made in contexts in which a tangible harm to others is especially likely to occur; and sometimes by limiting the prohibited lies to those that are particularly likely to produce harm." Id. at 734-36 (Breyer, J., concurring in judgment); see Animal Legal Def. Fund v. Kelly, 9 F.4th 1219, 1238 (10th Cir. 2021) ("read[ing] Alvarez not to suggest that falsity plus harm makes a statement not speech for First Amendment purposes; rather we read it to hold that falsity plus harm makes the statement not *protected* speech") (emphasis in original).

Although not in the context of criminal charges here, similar analysis applies here. Given this Supreme Court precedent, this Court must start from the premise that Worthley's representations, even false ones, are protected speech.[4] As to whether such statements are made in a context likely to produce harm, Defendants rely upon the (contested) record that Worthley misrepresented his affiliation in communications with KF, a minor child without parental consent. Unlike the Alvarez line of cases, in which false statements that cause a legally cognizable harm (i.e., fraud or defamation) are unprotected speech, see Animal Legal Defense Fund v. Reynolds, 297 F. Supp. 3d 901, 921-22 (S.D. Iowa 2018), there has been no such showing here. Accordingly, given this legal backdrop, the Court concludes that Worthley is reasonably likely to succeed in challenging this single line of the January 13th Order--"Unless expressly stated otherwise, you shall not represent yourself as being a representative of, or involved in, Gloucester Public School-sponsored volunteer events to students, their families, or

---

[4] Given Alvarez and the state of the record here, the Court questions whether even if this provision were limited to Worthley's representations while on GHS property, it would pass constitutional muster as Defendants suggest in their papers. D. 45 at 12.

14

Gloucester Public School staff"-- D. 28-1 at 3, and, accordingly, his motion for preliminary injunction as to this provision is allowed.

                d)        <u>Provision Barring Worthley from Soliciting Personal Information from GHS Students While on GHS Property</u>

Finally, Worthley is not reasonably likely to succeed in challenging the portion of the January 13th Order prohibiting him from "solicit[ing] personal information from [GHS] students while on [GHS] property." D. 28-1 at 3. Like the provision barring Worthley from GHS property except as otherwise provided, this provision is content-neutral and it is justified by Defendants' significant government interest in student safety and it is both narrowly tailored to serve that interest and leaves open ample alternative channels for communication. Central to Defendants' perceived safety concern is the undisputed evidence that Worthley obtained KF's phone number on GHS property and proceeded to text her without parental permission. See D. 1-2 at 22–24; 29–33. Again, although Worthley characterizes the nature of these communications differently, see id. at 20–21, the Court is persuaded that Defendants have a significant governmental interest in preventing an exchange of phone numbers and text messages between members of the public and a minor child without the permission of an adult while on school property. This portion of the January 13th Order is narrowly tailored to address this interest given Defendants' perceived safety concern. Moreover, this restriction leaves open ample alternative channels for communication. For example, Worthley remains free to solicit personal information from GHS students off school property as Defendants acknowledge. D. 45 at 9. He also remains free to solicit this information through their parents or school personnel.

Accordingly, Worthley is not reasonably likely to succeed in challenging this portion of the January 13th Order.[5]

### 2. Fourteenth Amendment Procedural Due Process Claim

Worthley has also challenged the January 13th Order as a violation of his procedural due process rights under the Fourteenth Amendment. D. 44 at 19. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Fusion Learning, Inc. v. Andover Sch. Comm., 609 F. Supp. 3d 5, 14 (D. Mass. 2022) (quoting Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 569 (1972)). "The basic purport of the constitutional requirement is that, before a significant deprivation of liberty or property takes place at the state's hands, the affected individual must be forewarned and afforded an opportunity to be heard at a meaningful time and in a meaningful manner. As the rubric itself implies, procedural due process is simply a guarantee of fair procedure." Id. (quoting Amsden v. Moran, 904 F.2d 748, 753 (1st Cir. 1990)) (internal quotation marks omitted).

---

[5] Worthley is also not reasonably likely to succeed on his First Amendment retaliation claim. To succeed on this claim, Worthley must show that his conduct "was constitutionally protected, and that this conduct was a substantial factor [or] . . . a motivating factor driving the allegedly retaliatory decision." Gorelik v. Costin, 605 F.3d 118, 123 (1st Cir. 2010) (alteration and omission in original) (internal citation and quotation marks omitted). Worthley has not demonstrated that texting KF was constitutionally protected speech. It is undisputed that Worthley obtained KF's phone number on school property and it is "well settled that the government need not permit all forms of speech on property that it owns and controls." Int'l Soc. for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 678 (1992). Furthermore, the Court is not persuaded that any constitutionally protected conduct was a substantial or motivating factor in the issuance of the January 13th Order by Defendants. To contend that it was, Worthley cites Lummis's refusal to return his calls about civic engagement. D. 44 at 10. Even if it were true that his civic vision differs from the Superintendent's, Worthley has still not shown a causal link between any protected speech and the allegedly retaliatory response. See Goldstein v. Galvin, 719 F.3d 16, 30 (1st Cir. 2013).

Here, the January 13th Order, does not deprive Worthley of any property or liberty interest as he does not have a constitutionally protected liberty or property interest in his access to GHS during school hours through this school year (except as expressly allowed in the Order). Hannemann, 673 F.3d at 755–56 (collecting cases). Assuming *arguendo* that Worthley has some liberty or property interest to be on GHS property and misrepresent his affiliation with GHS (which the Court has now struck), the Court turns to what process was due. "Determining what process is due requires balancing three factors: '[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest.'" Collins v. Univ. of New Hampshire, 664 F.3d 8, 17 (1st Cir. 2011) (alteration in original) (quoting Gilbert v. Homar, 520 U.S. 924, 931–32 (1997)). Given the limits of any arguable liberty and property interest he has to be on GHS property, the limited risk of erroneous deprivation by the January 13th Order given the hearing offered to Worthley on November 14, 2022 and reiterated in the January 13th Order, D. 17-1 ¶ 17; D. 28-1 at 3, the Court does not conclude that Worthley has a reasonable likelihood of success on this procedural due process claim.

    3.    *MCRA Claims*

Worthley also argues that the January 13th Order violates the MCRA. D. 46-1 at 11. The MCRA provides a right of action to any person whose exercise or enjoyment of rights secured by the federal or state constitution or laws has been interfered with by "threats, intimidation or coercion." Mass. Gen. L. c. 12, § 11I. Other than the additional requirement that an interference or attempted interference be by threats, intimidation or coercion, "the [MCRA] is generally interpreted coextensively with" Section 1983. Diaz v. Devlin, 229 F. Supp. 3d 101, 112 (D.

Mass. 2017) (citation omitted). To the extent that the Court has concluded that he is not reasonably likely to succeed on the merits of either of his Section 1983 claims, the Court also finds that Worthley is not reasonably likely to succeed on the merits of his MCRA claims. Id. Further, even if he has reasonable likelihood of success on any portion of his First Amendment claim, he has failed to show that any interference or attempted interference was by means of threats, intimidation or coercion by Defendants (even assuming that both defendants are subject to MCRA, D. 45 at 18 (and cases cited), as Worthley is required to do. Accordingly, this Court cannot conclude that he is reasonably likely to prevail on these MCRA claims.

### B.  Irreparable Harm

To obtain a preliminary injunction, Worthley must show a "significant risk of irreparable harm if the injunction is withheld," Nieves-Márquez v. P.R., 353 F.3d 108, 120 (1st Cir. 2002). "In the preliminary injunction context, the First Circuit measures irreparable harm 'on a sliding scale, working in conjunction with a moving party's likelihood of success on the merits, such that the strength of the showing necessary on irreparable harm depends in part on the degree of likelihood of success shown.'" Hearst Stations Inc. v. Aereo, Inc., 977 F. Supp. 2d 32, 40 (D. Mass. 2013) (quoting Braintree Lab'ys., Inc. v. Citigroup Glob. Mkts. Inc., 622 F.3d 36, 42–43 (1st Cir. 2010)).

While the "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," Sindicato Puertorriqueno de Trabajadores v. Fortuno, 699 F.3d 1, 10–11 (1st Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)) (internal quotation marks omitted), for the reasons discussed above, Worthley has not demonstrated that the January 13th Order amounts to irreparable harm. Unlike the enjoined November 14th Order, under the January 13th Order, Worthley is free to attend [GHS] sponsored

events which are generally open to the public, to appear at the eight [GHS] sponsored events to which Gloucester City Councilors are customarily invited and to appear at [GHS] sponsored events or activities which involve his son. Compare D. 1-2 at 39 with D. 28-1. Moreover, the Court has struck the provision of the January 13th Order prohibiting his representation of an affiliation with Gloucester Public School-sponsored volunteer events, and the prohibition that remains to solicit the personal information of GHS students applies only on GHS property. Lastly, any assertion of irreparable harm is further undermined by the fact that the January 13th Order is limited in duration, expiring at the end of the 2022-2023 school year. D. 28-1 at 2; see Wood v. Arnold, 321 F. Supp. 3d 565, 583 (D. Md. 2018) (ruling that a school no trespass order against a father did not violate his free speech rights in part because it "was limited in duration").

C.     **Balance of Equities and Public Interest**

The final considerations in weighing the grant of a preliminary injunction are "a balance of equities in the plaintiff's favor, and [ ] service of the public interest." Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, 794 F.3d 168, 171 (1st Cir. 2015). Both factors favor the denial of an injunction here. "The Court must balance 'the hardship that will befall the nonmovant if the injunction issues . . . with the hardship that will befall the movant if the injunction does not issue.'" Dunkin' Donuts Franchised Rests. LLC v. Wometco Donas Inc., 53 F. Supp. 3d 221, 231–32 (D. Mass. 2014) (quoting Mercado–Salinas v. Bart Enter. Intern., Ltd., 671 F.3d 12, 19 (1st Cir. 2011)). "A preliminary injunction must also be in the public interest." Id. (citing Voice of the Arab World, Inc., 645 F.3d at 32).

For the reasons discussed above, the Court is persuaded that the January 13th Order is narrowly tailored to serve Defendants' significant government interest in ensuring student safety. The balance of harms to the parties and the public interest, therefore, weigh against enjoining the

January 13th Order in its entirety as Worthley seeks.

**VI.     Conclusion**

For all these reasons, the Court DENIES Worthley's motion for injunctive relief, D. 43, except that it ALLOWS the motion as to the provision of the January 13th Order that bars Worthley from representing himself as a representative of, or being involved in, Gloucester Public School-sponsored volunteer events. D. 28-1 at 3.[6]  All other provisions of the January 13th Order shall remain in full force and effect through the end of the 2022-23 school year as provided in its terms.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[6] To the extent that any bond requirement applies to the allowance of this motion in part, the Court waives the bond requirement under Fed. R. Civ. P. 65(c).  See D. 29 at 16.